# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW MEXICO

| | |
|---|---|
| STEVEN HAESE, Individually and For Others Similarly Situated<br><br>v.<br><br>CLOVER LEAF SOLUTIONS, LLC f/k/a CLOVER LEAF SOLUTIONS, INC. | Case No. _____<br><br>Jury Trial Demanded<br><br>FLSA Collective Action<br>Rule 23 Collective Action |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Steven Haese (Haese) brings this class and collective action to recover unpaid wages and other damages from Clover Leaf Solutions, LLC f/k/a Clover Leaf Solutions, Inc. (Clover Leaf).

2. Clover Leaf employed Haese as one of its Straight Time Workers (defined below).

3. Clover Leaf pays Haese and the other Straight Time Workers by the hour.

4. Haese and the other Straight Time Workers regularly work more than 40 hours a week.

5. But Clover Leaf does not pay Haese and its other Straight Time Workers required premium overtime wages.

6. Instead, Clover Leaf pays them the same hourly rate for all hours worked, including hours worked in excess of 40 in a workweek (Clover Leaf's "straight time for overtime pay scheme").

7. Clover Leaf applies its straight time for overtime pay scheme to Haese and its other Straight Time Workers regardless of allegedly individualized differences.

8. Clover Leaf never paid Haese and the other Straight Time Workers on a salary basis.

9. Clover Leaf's straight time for overtime pay scheme violates the Fair Labor Standards Act (FLSA) and New Mexico Minimum Wage Act (NMMWA) by depriving Haese and the other Straight Time Workers of the "time and a half" overtime premium they are owed for hours worked

1

over 40 in a workweek.

## JURISDICTION & VENUE

10. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

11. This Court has supplemental jurisdiction over the state law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

12. This Court has general personal jurisdiction over Clover Leaf because Clover Leaf maintains its principal place of business in Albuquerque, New Mexico.

13. Venue is proper because Clover Leaf maintains its principal place of business in this District. 28 U.S.C. § 1391(b)(1).

## PARTIES

14. Haese worked for Clover Leaf as a senior safety professional in and around Rio Rancho, New Mexico, most recently from approximately July 2022 through July 2024.

15. Throughout his employment, Clover Leaf paid Haese under its straight time for overtime pay scheme.

16. Haese's written consent is attached as **Exhibit 1**.

17. Haese brings this class and collective action on behalf of himself and all other similarly situated employees who worked for, or on behalf of Clover Leaf, who were paid under its straight time for overtime pay scheme.

18. The putative FLSA collective of similarly situated employees is defined as:

> **All Clover Leaf employees who were paid the same hourly rate for all hours worked, including hours worked after 40 in a workweek, at any time during the past 3 years ("FLSA Collective Members").**

19. The putative NMMWA class of similarly situated employees is defined as:

> **All Clover Leaf employees in New Mexico who were paid the same hourly rate for all hours worked, including hours worked after 40 in a workweek. ("New Mexico Class Members").**

20. The FLSA Collective Members and the New Mexico Class Members are collectively referred to as the "Straight Time Workers."

21. Clover Leaf is a Delaware limited liability company headquartered in Albuquerque, New Mexico.

22. Clover Leaf can be served through its registered agent: **Corporation Service Company, 732 E. Michigan Dr., Suite 500, Hobbs, New Mexico**.

## FLSA COVERAGE

23. At all relevant times, Clover Leaf was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

24. At all relevant times, Clover Leaf was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

25. At all relevant times, Clover Leaf was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as phones, computers, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

26. At all relevant times, Clover Leaf has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

27. At all relevant times, Haese and the other Straight Time Workers were Clover Leaf's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

28. At all relevant times, Haese and the other Straight Time Workers were engaged in commerce or in the production of goods for commerce.

## FACTS

29. Clover Leaf bills itself as "a professional services company supporting government agencies and large commercial projects."[1]

30. To meet its business objectives, Clover Leaf hires workers, like Haese and the other Straight Time Workers, to provide its construction and project management services.

31. For example, Haese worked for Clover Leaf as a senior safety professional on-site at an Intel (one of Clover Leaf's clients) facility in Rio Rancho, New Mexico from approximately July 2022 through July 2024.

32. As a senior safety professional, Haese's primary job duties included reviewing and ensuring that safety rules and procedures were properly followed throughout Clover Leaf's client's project.

33. Haese was Clover Leaf's hourly employee.

34. Specifically, Clover Leaf paid Haese approximately $65 an hour.

35. And Clover Leaf paid him a "per diem" for at least some portion of his work.

36. Haese reported his hours worked to Clover Leaf.

37. Clover Leaf's records reflect the hours Haese reported working each week.

38. Haese regularly worked more than 40 hours a week while employed by Clover Leaf.

39. Haese typically worked approximately 10 hours a day and 6 days a week (60 hours a workweek).

40. Despite knowing Haese regularly worked overtime, Clover Leaf did not pay him overtime wages for the hours he worked in excess of 40 a workweek, as confirmed in his offer letter:

---

[1] https://www.cloversolutions.us/ (last visited May 15, 2025).

> We are offering you the position of Senior Safety Professional, at an hourly rate of $65.00/hour. Additional billable hours worked will be paid at straight time hourly rate. This role is a full-time, exempt salaried position. Your start date is projected to be 7/5/2022. The position is onsite at Intel in Rio Rancho, NM.

41. Instead, Clover Leaf paid him under its straight time for overtime pay scheme.

42. While Clover Leaf labels Haese's job as an "exempt salaried position," it fails to guarantee Haese that he will receive any wages on a salary basis, but rather, agreed only to pay him "an hourly rate of $65.00/hour."

43. And Haese's paystubs confirm that Clover Leaf paid him $65 an hour on an hourly (not salary) basis, for example his paystub from the pay period ending June 25, 2024:

**Steven R Haese**

| | | | | | |
|---|---|---|---|---|---|
| Employee ID | | | Fed Taxable Income | 6,449.82 | |
| Location | NM-Admin-CO | | Fed Filing Status | S | F |
| Hourly | | $65.00 | State Filing Status | S | F |

| Earnings | Rate | Hours | Amount | YTD |
|---|---|---|---|---|
| 401k Match | | 0.00 | 330.20 | 4,269.85 |
| Holiday | 65.00 | 8.00 | 520.00 | 4,940.00 |
| Regular | 65.00 | 80.00 | 5,200.00 | 72,800.00 |
| SCORP ME | | | | 0.00 |
| Straight O | 65.00 | 39.00 | 2,535.00 | 29,006.25 |
| **Gross Earnings** | | **127.00** | **8,255.00** | **106,746.25** |

44. Thus, under Clover Leaf's straight time for overtime pay scheme, Haese did not receive premium overtime wages of at least 1.5 times his regular rate of pay for the hours he worked over 40 in a workweek.

45. Clover Leaf pays its other Straight Time Workers according to the same straight time for overtime pay scheme it imposed on Haese.

46. Like Haese, Clover Leaf pays its other Straight Time Workers by the hour.

47. And Clover Leaf likewise paid them a "per diem" for at least some portion of their employment.

48. And Clover Leaf requires them to report their hours to Clover Leaf via its designated timekeeping system.

49. Thus, just as Clover Leaf maintains records of the hours Haese reported, it also maintains records of the hours the other Straight Time Workers reported.

50. Clover Leaf's records show the Straight Time Workers, like Haese, regularly work more than 40 hours a workweek.

51. Every Straight Time Worker worked more than 40 hours in at least one workweek during the relevant period.

52. Indeed, like Haese, the Straight Time Workers typically work approximately 10 hours a day and 6 days a week (60 hours a workweek).

53. Despite knowing the Straight Time Workers regularly work overtime hours, Clover Leaf does not pay them premium overtime wages.

54. Instead, Clover Leaf pays them the same hourly rate for all hours worked, including hours worked in excess of 40 in a workweek.

55. Clover Leaf never paid Haese and the other Straight Time Workers on a "salary basis."

56. Clover Leaf does not pay Haese and the other Straight Time Workers a guaranteed sum on a weekly or less frequent basis that is not subject to reduction based on the quality or quantity of work.

57. Rather, any alleged "salary" Clover Leaf purports to pay Haese and the other Straight Time Workers is subject to reduction—and is in fact reduced—based on the quality or quantity worked.

58. Haese and the other Straight Time Workers are only paid for the hours they work.

59. But even if Clover Leaf had paid Haese and the other Straight Time Workers a guaranteed weekly salary (it did not), the "salary" would not bear a "reasonable relationship" to their actual weekly earnings. *See* 29 C.F.R. § 541.604(b).

60. Thus, Clover Leaf never paid Haese and the other Straight Time Workers on a "salary basis." *See Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 143 S. Ct. 677, 685 (2023); *see also* 29 C.F.R. § 541.604.

61. Because Clover Leaf fails to pay Haese and its other Straight Time Workers on a "salary basis," they are non-exempt employees entitled to premium overtime wages.

62. But Clover Leaf does not pay them premium overtime wages when they work more than 40 hours in a workweek.

63. Instead, Clover Leaf pays Haese and its other Straight Time Workers under its straight time for overtime pay scheme, in violation of the FLSA and NMMWA.

### CLASS AND COLLECTIVE ACTION ALLEGATIONS

64. Like Haese, the other Straight Time Workers are similarly victimized by Clover Leaf's straight time for overtime pay scheme.

65. Other Straight Time Workers worked with Haese and indicated they were paid in the same manner, subject to Clover Leaf's straight time for overtime pay scheme.

66. Based on his experience with Clover Leaf, Haese is aware Clover Leaf's straight time for overtime pay scheme was imposed on other Straight Time Workers.

67. The Straight Time Workers are similarly situated in the most relevant respects.

68. Even if their precise job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime pay.

69. Any relevant exemption defenses would require Clover Leaf to pay the Straight Time Workers on a "salary basis."

70. Because Clover Leaf fails the "salary basis" test with respect to the Straight Time Workers, the specific job duties performed by those employees are largely irrelevant.

71. Therefore, the specific job titles or precise job locations of the various Straight Time Workers do not prevent class or collective treatment.

72. Rather, Clover Leaf's straight time for overtime pay scheme renders Haese and the other Straight Time Workers similarly situated for the purposes of determining their right to overtime wages.

73. Clover Leaf's records reflect the number of hours Haese and the other Straight Time Workers recorded each week.

74. Clover Leaf's records also show it paid Haese and the other Straight Time Workers "straight time," instead of "time and a half," for their overtime hours.

75. The back wages owed to Haese and the other Straight Time Workers can therefore be calculated using the same formula applied to the same records.

76. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Clover Leaf's records, and there is no detraction from the common nucleus of liability facts.

77. Therefore, the issue of damages does not preclude class or collective treatment.

78. Haese's experiences are therefore typical of the experiences of the other Straight Time Workers.

79. Haese has no interest contrary to, or in conflict with, the Straight Time Workers that would prevent class or collective treatment.

80. Like each Straight Time Worker, Haese has an interest in obtaining the unpaid wages owed under federal and New Mexico law.

81. Haese and his counsel will fairly and adequately protect the interests of the Straight Time Workers.

82. Indeed, Haese retained counsel with significant experience in handling complex class and collective action litigation.

83. A class and collective action is superior to other available means for fair and efficient adjudication of this lawsuit.

84. Absent this class and collective action, many Straight Time Workers will not obtain redress for their injuries, and Clover Leaf will reap the unjust benefits of violating the FLSA and NMMWA.

85. Further, even if some of the Straight Time Workers could afford individual litigation, it would be unduly burdensome to the judicial system.

86. Indeed, the multiplicity of actions would create hardship to the Straight Time Workers, to the Court, and to Clover Leaf.

87. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Straight Time Workers' claims.

88. The questions of law and fact that are common to each Straight Time Worker predominate over any questions affecting solely the individual Hourly Employees.

89. Among the common questions of law and fact are:

   a. Whether Clover Leaf failed to pay the Straight Time Workers premium overtime wages for all hours worked in excess of 40 a workweek under its straight time for overtime pay scheme;

   b. Whether Clover Leaf failed to pay the Straight Time Workers on a salary basis;

   c. Whether Clover Leaf's failure to pay the Straight Time Workers premium overtime wages as required by the NMMWA under its straight time for overtime pay scheme constituted a continuing course of unlawful conduct;

   d. Whether Clover Leaf's decision not to pay the Straight Time Workers premium overtime wages for all overtime hours worked was made in good faith; and

   e. Whether Clover Leaf's violations were willful.

90. Clover Leaf's straight time for overtime pay scheme deprived Haese and the other Straight Time Workers of the premium overtime wages they are owed under federal and New Mexico law.

91. There are many similarly situated Straight Time Workers who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

92. The Straight Time Workers are known to Clover Leaf and are readily identifiable through Clover Leaf's business and personnel records.

### CLOVER LEAF'S VIOLATIONS WERE WILLFUL

93. Clover Leaf knew it controlled Haese's and the other Straight Time Workers' rates of pay.

94. Clover Leaf knew it controlled Haese's and the other Straight Time Workers' method of pay.

95. Clover Leaf knew it controlled Haese's and the other Straight Time Workers' work schedules.

96. Clover Leaf knew it prohibited Haese and the other Straight Time Workers from straying from Clover Leaf's procedures, specifications, and other protocols in performing their job duties.

97. Clover Leaf knew it did not require Haese and the other Straight Time Workers to possess any specialized skillset other than that maintained by all workers in their respective job positions.

98. Clover Leaf knew Haese's and the other Straight Time Workers' work was integral to Clover Leaf's core business operations.

99. Clover Leaf knew its investment in the tools and equipment necessary for Haese and the other Straight Time Workers to perform their jobs relatively outweighed any investment made by these workers.

100. Clover Leaf knew Haese and the other Straight Time Workers relied on it for work and compensation.

101. Clover Leaf knew it controlled Haese's and the other Straight Time Workers' opportunity for profit or loss and that it limited their opportunity for profit or loss to the single hourly rate Clover Leaf paid them.

102. Thus, Clover Leaf knew, should have known, or recklessly disregarded whether, as a matter of economic reality, Haese and the other Straight Time Workers were Clover Leaf's employees.

103. Nonetheless, Clover Leaf misclassified Haese and the other Straight Time Workers as independent contractors.

104. Clover Leaf's misclassification of Haese and the other Straight Time Workers as independent contractors was designed to mask its violation of the FLSA.

105. Clover Leaf's misclassification of Haese and the other Straight Time Workers as independent contractors was neither reasonable, nor was its decision to misclassify Haese and the other Straight Time Workers as independent contractors made in good faith.

106. Clover Leaf knew it was subject to the FLSA's overtime provisions.

107. Clover Leaf knew the FLSA required it to pay non-exempt employees, including Haese and the other Straight Time Workers, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 each workweek.

108. Clover Leaf knew Haese and each Straight Time Workers worked more than 40 hours in at least one workweek during relevant period because it required them to report their hours.

109. Clover Leaf knew Haese and the other Straight Time Workers were its hourly employees.

110. Clover Leaf knew Haese and its other Straight Time Workers were paid by the hour.

111. Clover Leaf knew Haese and its other Straight Time Workers were paid straight time for overtime.

112. Clover Leaf knew it did not pay Haese and its other Straight Time Workers on a "salary basis."

113. Clover Leaf knew it did not pay Haese and its other Straight Time Workers any guaranteed sum on a weekly or less frequent basis that was not subject to reduction based on the quantity or quality of work.

114. Clover Leaf knew that any purported "salary" it claims Haese and its other Straight Time Workers received was not "reasonably related" to their actual weekly earnings.

115. Clover Leaf knew its straight time for overtime pay scheme did not satisfy the FLSA's "salary basis" test.

116. Clover Leaf knew it needed to pass the "salary basis" test to qualify for any exemptions it could claim with respect to Haese and the other Straight Time Workers.

117. Nonetheless, Clover Leaf uniformly misclassified Haese and its other Straight Time Workers as exempt employees and refused to pay them overtime wages.

118. Clover Leaf's decision to misclassify Haese and its other Straight Time Workers as exempt employees was neither reasonable, nor was it made in good faith.

119. Clover Leaf's failure to pay Haese and its other Straight Time Workers overtime wages was neither reasonable, nor was its decision not to pay these non-exempt employees overtime wages made in good faith.

120. Clover Leaf knew, should have known, or showed reckless disregard for whether its conduct described in this Complaint violated the FLSA.

121. Clover Leaf knowingly, willfully, and/or in reckless disregard carried out its straight time for overtime pay scheme that deprived Haese and the other Straight Time Workers of overtime wages, in willful violation of the FLSA.

## COUNT I
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA

122. Haese brings his FLSA claims as a collective action on behalf of himself and the other FLSA Collective Members.

123. Clover Leaf violated the FLSA by employing non-exempt employees, Haese and the other FLSA Collective Members, in a covered enterprise for workweeks longer than 40 hours without paying them overtime wages of at least 1.5 times their regular rates of pay for the hours they worked after 40 in a workweek.

124. Clover Leaf's unlawful conduct harmed Haese and the other Straight Time Workers by depriving them of the overtime wages they are owed.

125. Accordingly, Clover Leaf owes Haese and the other Straight Time Workers the difference between the wages actually paid and the required overtime wages.

126. Because Clover Leaf knew, or showed reckless disregard for whether its straight time for overtime pay scheme violated the FLSA, Clover Leaf owes these wages for at least the past 3 years.

127. Clover Leaf is also liable to Haese and the other Straight Time Workers for an additional amount equal to all their unpaid wages as liquidated damages.

128. Finally, Haese and the other Straight Time Workers are entitled to recover all reasonable attorney's fees and costs incurred in this action.

## COUNT II
### FAILURE TO PAY OVERTIME WAGES UNDER THE NMMWA
### (NEW MEXICO CLASS)

129. Haese brings his NMMWA claim on behalf of himself and the New Mexico Class Members pursuant to FED. R. CIV. P. 23.

130. The conduct alleged in this Complaint violates the NMMWA. N.M.S.A. §§ 50-4-20, *et seq*.

131. At all relevant times, Clover Leaf has been an "employer" within the meaning of the NMMWA. *See* N.M.S.A. § 50-4-1; *see also* N.M.S.A. § 50-4-21.

132. At all relevant times, Clover Leaf has been an "enterprise in business" within the meaning of the NMMWA.

133. At all relevant times, Haese and each New Mexico Class Member have been covered "employees" within the meaning of the NMMWA. *See* N.M.S.A. § 50-4-21(C).

134. At all relevant times, Clover Leaf has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof.

135. The NMMWA requires employers, like Clover Leaf, to pay employees, including Haese and the other New Mexico Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 hours in any one 7-day workweek. *See* N.M.S.A. § 50-4-22(D).

136. Haese and the Hourly Employees are entitled to overtime wages under the NMMWA for all hours worked in excess of 40 hours in a 7-day workweek.

137. Clover Leaf violated, and is violating, the NMMWA by employing non-exempt employees (Haese and the other New Mexico Class Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 in a 7-day workweek. *See* N.M.S.A. § 50-4-22(D).

138. Clover Leaf's unlawful straight time for overtime pay scheme was, and is, part of a continuing course of conduct, entitling Haese and the other New Mexico Class Members to recover for all such violations, regardless of the date they occurred.

139. Clover Leaf's unlawful conduct harmed Haese and the New Mexico Class Members by depriving them of the premium overtime wages they are owed.

140. Accordingly, Haese and the other New Mexico Class Members are entitled to recover their unpaid overtime wages in an amount equal to 1.5 times their regular rates of pay for all hours worked in excess of 40 in a seven-day workweek; "an additional amount equal to twice the unpaid … wages" as treble damages, N.M.S.A. § 50-4-26(C); and all reasonable attorneys' fees and costs incurred in this action, N.M.S.A. § 50-4-26(E).

**JURY DEMAND**

141. Haese demands a trial by jury.

**RELIEF SOUGHT**

15

WHEREFORE, Haese, individually and on behalf of the other Straight Time Workers, seeks the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice to the Straight Time Workers allowing them to join this action by filing a written notice of consent;

b. An Order designating this lawsuit as a class action and certifying the putative class pursuant to FED. R. CIV. P. 23;

c. An Order designating Haese and his counsel to represent the interests of the putative class;

d. An Order finding Clover Leaf liable to Haese and the other Straight Time Workers for all unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

e. An Order finding Clover Leaf liable to Haese and the other Straight Time Workers for all unpaid overtime wages owed under the NMMWA and treble damages in an amount equal to two times their unpaid overtime wages;

f. A Judgment against Clover Leaf awarding Haese and the other Straight Time Workers all their unpaid overtime wages, liquidated damages, treble damages, and any other penalties available under the FLSA and/or NMMWA;

g. An Order awarding attorney's fees, costs, and expenses;

h. Pre- and post-judgment interest at the highest applicable rates; and

i. Such other and further relief as may be necessary and appropriate.

| | |
|---|---|
| Dated: May 16, 2025 | Respectfully submitted,<br><br>**JOSEPHSON DUNLAP LLP**<br><br>By: _/s/ Michael A. Josephson_<br>Michael A. Josephson<br>TX Bar No. 24014780<br>Andrew W. Dunlap<br>TX Bar No. 24078444<br>11 Greenway Plaza, Suite 3050<br>Houston, Texas 77046<br>Phone: (713) 352-1100<br>Fax:    (713) 352-3300<br>mjosephson@mybackwages.com<br>adunlap@mybackwages.com<br><br>Richard J. (Rex) Burch<br>TX Bar No. 24001807<br>**BRUCKNER BURCH PLLC**<br>11 Greenway Plaza, Suite 3025<br>Houston, Texas 77046<br>Phone: (713) 877-8788<br>Fax:    (713) 877-8065<br>rburch@brucknerburch.com<br><br>**ATTORNEYS FOR HAESE**<br>**& THE STRAIGHT TIME WORKERS** |